# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ALTON B. COLE,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C08-4034-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the court for judicial review of the defendant's decision denying the plaintiff's application for disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.

The plaintiff Alton B. Cole filed his application for DI benefits on October 20, 2004, alleging he has been disabled since September 30, 2004, due to muscular dystrophy, pain throughout his body but especially in his neck and back, headaches, generalized fatigue and weakness, depression, and intermittent numbness in his hands, buttocks, and knees. He also complains of problems sleeping, poor balance, loss of grip strength, poor bowel control, difficulty getting in and out of chairs and vehicles, frequent bruising from falls, and dizziness and instability if he stands for very long. In addition, Cole has a history of a congenital heart defect, which was repaired in January 2007, with implantation of an atrial septal closure device.

Cole's application was denied initially and on reconsideration. Following a hearing on June 14, 2007, an administration law judge ("ALJ") again denied his claim. On March 10, 2008, the Appeals Council of the Social Security Administration affirmed the ALJ's denial of benefits, making the ALJ's decision the final decision of the Commissioner.

Cole filed a timely Complaint in this court seeking judicial review of the Commissioner's decision. Cole argues substantial evidence in the record does not support the Commissioner's decision that he is not disabled. *See* Doc. No. 17. On August 22, 2008, with the parties' consent, the Honorable Donald E. O'Brien transferred the case to the undersigned for further proceedings and the entry of final judgment in the case. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issue before the court is whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court considers the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Cole was born in 1963, and was forty years old at his alleged onset date. He obtained a G.E.D., and has had no further formal education since that time. He worked as a maintenance mechanic for the Sioux City Community School District for twenty-three years. Near the end of his employment, he began missing a lot of work due to pain, and he had problems performing the required activities due to muscle weakness. He sometimes fell at work, including once when he was carrying a desk down some stairs and the desk fell on him. He has difficulty with fecal incontinence about once a week but he does not wear any specialized undergarments, and on a couple of occasions, he had to go home from work and shower due to incontinence. He eventually was fired from his job when he failed a drug test. He admitted to abusing alcohol and marijuana in the past, but stated he had been sober for five months at the time of the ALJ hearing. He is right-handed, and has observable muscle atrophy in his arms and legs.

With regard to his daily activities, Cole usually gets up around 10:00 to 11:00 in the morning. When he arises, he is "sore," "achy," and "off-balance," and it takes him awhile to get moving. He has difficulty combing his hair and doing other activities that require him to lift his arms over his head. He eats breakfast, and then spends most of his time in a "high-lift chair" in front of the television, although he keeps the sound low and does not pay a lot of attention to what is showing. He has to get up and stretch about every thirty minutes. He usually does not eat lunch. He can drive himself where he needs to go, and he sometimes goes out for coffee, staying out for thirty to forty-five minutes. He usually naps for two to three hours during the day. He occasionally walks around briefly in his backyard. He has no hobbies. He mows his own yard using a riding lawn mower.

Cole prepares his dinner between 6:00 and 8:00 in the evening, usually consisting of "frozen pizza, spaghetti, [or] hamburger." He goes to bed between 11:00 and 12:00 at night, but he does not sleep well because he is unable to get comfortable due to neck pain. He estimated he gets about two hours of restful sleep per night, with the rest of the night spent tossing and turning. He evidenced discomfort during the ALJ hearing, and the ALJ told Cole he could stand up if necessary. The ALJ observed that Cole "shifted around" during the ALJ hearing. (A.R. 20)

Cole has problems with memory and concentration. He writes notes to help himself remember important things. He does his own grocery shopping, but he has problems lifting the bags if they weigh over twenty pounds. He estimated he can walk about two to three blocks on a flat surface, but he gets fatigued and sometimes falls if he tries to go up hills. He does not walk with any assistive device, but when he walks around his house, he uses the walls to help himself balance. He has trouble bending and keeps everything in his house on upper shelves so he can avoid bending. He does his own laundry about once a week. He drags the laundry basket rather than carrying it, and his washer is up on

3

blocks so he does not have to bend down. Bending causes his back to hurt, and he sometimes falls if he is unable to hold onto something when he bends. Stretching helps the pain somewhat.

Cole experiences pain in his feet, knees, hips, and joints from his muscular dystrophy. Nothing he has tried helps much with his pain. If he tries to walk more than about two blocks, or about twenty minutes, he will experience burning in his feet and tingling in his legs.

For the couple of years prior to the ALJ hearing, Cole was ill several times, and he self-medicated using over-the-counter animal antibiotics that he obtained from a hardware store. He testified that he believed these antibiotics were the same as those prescribed for humans, and they were less expensive than when obtained from a doctor. He has no funds to pay for a doctor or medications. His father helps him with about $200 a month for food and bills.

Cole stated he does not get along well with people. His irritability has worsened over time, and he attributes this to his ongoing pain. He has not sought much medical treatment for his condition since he quit working in 2004, because he has no insurance, and in addition, he believes there is nothing doctors can do for his muscular dystrophy symptoms. According to Cole, at the time he was diagnosed with muscular dystrophy, he was told that he would die by the age of twenty-five. He is afraid to see a doctor because he fears he will be told he does not have much longer to live.

The ALJ asked a Vocational Expert ("VE") to consider a hypothetical individual with a G.E.D. and Cole's past relevant work. who "has an overarching residual functional capacity for a full range of sedentary work," with "the following additional functional limitations":

> He cannot reach over his . . . shoulder laterally. He cannot push or pull repetitively with his upper or lower extremities bilaterally. Bending, twisting and turning from a seated

position is limited to frequent. From a standing position is limited to occasional. There is more. He cannot crawl. He could stoop occasionally. He can squat occasionally. He can kneel to get down, but he would have difficulty getting back up, and for that reason his ability to kneel would be less than occasional, but it is possible.

Climbing stairs is occasional. He cannot climb ropes or ladders. He cannot use air or vibrating tools. He cannot use motor vehicles. He cannot work around moving machinery. I define moving machinery as machinery which is mobile. It does not include machinery that has moving parts which are, which is, has a stable base and does not move, even if those moving parts are exposed and even if they extend out beyond the base of the perimeter of the machine such as robotic arms. He cannot work at unprotected heights. He needs an, an environment which is not antiseptically clean, but contains no more than moderate ambient dust, smoke or fumes.

He cannot work at temperatures of cold, heat or humidity. There's more. With regard to mentally-based non-exertional impairments, his ability to remember short, simple instructions is slightly limited. His ability to remember detailed instructions is moderately limited, it, that can extend to markedly limited, but if the instructions are written down and accessible, that . . . is moderate. Now all of the limitations are presuming that this job is a job which can be learned in a, in a period of time between a simple demonstration, up to not more than 29 days.

(A.R. 241-42)

The VE indicated the hypothetical individual would be unable to return to any of Cole's past relevant work, and would have no transferable skills. However, the individual would be able to perform unskilled work such as order clerk of food and beverage, information clerk, or callout operator, each of which jobs is available in sufficient numbers in this area.

5

The ALJ next asked the VE to consider the same individual, but with the additional restrictions of the need to shift positions while seated, the ability to remain on task, and the need to stand and stretch for about five minutes every forty-five minutes. The VE stated this individual would be able to perform the same unskilled jobs as the individual in the first hypothetical.

The ALJ then asked the VE to consider a third hypothetical individual with the same residual functional capacity and vocational profile as the second hypothetical individual, but with the additional restriction that he is unable to bend. Again, the VE responded that the individual would be able to perform the same unskilled jobs.

The ALJ asked the VE to consider a fourth hypothetical individual with the same limitations as the second hypothetical individual, but with the additional limitation that he cannot stand for more than ten minutes at any one time. The VE stated the individual could perform the same unskilled jobs listed previously because all of those jobs are sedentary.

Finally, the ALJ asked the VE to consider the fourth hypothetical individual but with the added limitation that he "has fatigue and is not able to complete an eight-hour workday." (A.R. 245) The VE stated this individual would be unable to sustain competitive employment.

Subsequent to the hearing, the ALJ sent Cole for a consultative examination, which was performed by Douglas W. Martin, M.D. on August 2, 2007. (A.R. 207-13) Dr. Martin reviewed Cole's prior treatment records in detail, took a history from Cole of his current complaints, and performed a physical examination. He indicated Cole's musculature dystrophy "is more of an issue from the standpoint of endurance than it is anything." (A.R. 210) He found Cole to have no loss of muscular tone, atrophic changes, significant gait abnormalities, or significant loss of strength. He opined Cole could carry up to twenty-five pounds occasionally, fifteen pounds frequently, and five pounds

constantly; stand four hours in an eight-hour workday with reasonable breaks; walk six to seven blocks before having to take a break; sit without limitation; stoop, climb, kneel, and crawl at "about one-half of what would be considered normal"; and he would have no limitations related to seeing, hearing, speaking, or traveling, or with environmental exposures such as dust, fumes, temperatures, or hazards.

The ALJ found Cole to have a severe combination of impairments consisting of "limb girdle muscular dystrophy, a history of atrial septal defect with status post occluder placement, and depression." (A.R. 16) He found none of these impairments, singly or in combination, and whether physical or mental or both, met the Listing level of severity. He found Cole's residual functional capacity to be consistent with the ALJ's first hypothetical question to the VE.

The ALJ found Cole's subjective complaints not to be fully credible. He noted Cole had admitted to smoking marijuana in the past. The ALJ stated he was "convinced that [Cole's] cannabis affects his mental functioning and his depression," and he disbelieved Cole's testimony "that he is only smoking cannabis only infrequently." (A.R. 20) The ALJ also indicated Cole "at one time agreed to undergo therapy, but never followed through." (A.R. 21, citing A.R. 202) The exhibit cited by the ALJ does not appear to support his conclusion that Cole agreed to seek treatment for cannabis abuse. Rather, the record indicates that in 2005, at the time the cited Social Services Note was written, Cole had a flat affect; cried easily, especially when discussing his muscular dystrophy; struggled with chronic pain and depression; and indicated his dog was the "only thing that makes him smile." (A.R. 202) According to the note, Cole indicated he was willing to see a "psych intern for counseling" if it could be scheduled on the same day as his medical appointment "due to financial stress." *Id.*

The ALJ further found that although Cole "testified that he has significant functional limitations, psychologists have opined that [he] can do simple and unskilled work." (A.R.

7

21, citing A.R. 173-97) One of the exhibits cited by the ALJ, found at A.R. 173-93, contains records from Cardiovascular Associates and relates only to Cole's heart defect and repair, not to any psychological evaluation. The second exhibit, found at A.R. 194-97, is a Mental Status Exam performed on March 15, 2005, at the request of the state agency. Consulting psychologist Denise Marandola, Ph.D. noted Cole had a depressed mood and flat affect throughout the interview, and "he appeared to be tired." (A.R. 196) Cole stated he used marijuana occasionally because it helped relieve his pain and depression. During testing, he exhibited normal cognitive functioning, but he had problems even with short-term recall. He exhibited normal pace but poor attention and concentration. After interviewing Cole and administering the Beck Depression Inventory-II, Dr. Marandola diagnosed Cole with Depressive Disorder, NOS-Severe; Cannabis Dependence, in partial remission; Muscular dystrophy with recurrent headaches; and poor medical compliance due to lack of funds. She assigned a Global Assessment of Functioning (GAF) of 48, indicating "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). Dr. Marandola opined Cole would be able to interact appropriately with supervisors, coworkers, and the public, and he would respond appropriately to changes in the work environment. (A.R. 193-97)

The court has located nothing in the cited exhibits to indicate "psychologists have opined that [Cole] can do simple and unskilled work," as claimed by the ALJ.

In discounting Cole's credibility, the ALJ further stated Cole's "neurologist opined that [Cole's] sedentary lifestyle will make him weaker and he recommended another line of work." (A.R. 21, citing A.R. 168) This is a misstatement of the neurologist's report. The neurologist said nothing about Cole's "sedentary lifestyle" making him weaker. Rather, the neurologist stated Cole "has a muscle dystrophy that will make him

8

increasingly weak and he will get tired very easily. Also he has depression." (A.R. 168) Several weeks later, the neurologist "encouraged [Cole] to look for another job where he doesn't do a lot of physical activity," noting Cole had expressed feeling "very depressed because he thinks that everything is going wrong in his life." (A.R. 167)

The ALJ indicated he had given "great weight to the medical opinion of Dr. Martin and Dr. Marandola," and he found Cole's subjective complaints to be inconsistent with those opinions and therefore lacking in credibility. (A.R. 21) The court finds the ALJ misinterpreted Dr. Marandola's opinion and other portions of the record, and the record does not contain substantial evidence to support the ALJ's conclusion that Cole's subjective allegations lack credibility. On the contrary, the court finds Cole's subjective allegations to be consistent with the medical evidence of record, in particular with his reports to physicians and others regarding his symptoms.

The ALJ placed too much emphasis on Cole's periodic use of marijuana, and this appears to have skewed the ALJ's consideration of the other substantial evidence of record. Indeed, if the ALJ was convinced that Cole's cannabis use "affect[ed] his mental functioning and his depression" (A.R.20), then the ALJ erred in failing to consider the impact of Cole's drug use or abuse in the disability determination. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693-94 (8th Cir. 2003) (when substance use is an issue, ALJ's decision should "reflect the Commissioner's regulations outlining how to account for substance use disorders in disability determination proceedings") (citing 20 C.F.R. § 404.1535). The court finds, however, that the evidence does not support a conclusion that Cole's cannabis use is a material factor in the disability determination.

The record evidence indicates Cole had nearly twenty-four years of successful employment with the same employer. He was diagnosed with muscular dystrophy around the time of his majority, and was given a gloomy prognosis with little chance that he ever would improve. His condition has continued to decline as he has aged, to the point that

9

by the fall of 2004, he no longer was able to manage the physical requirements of his employment. He drank alcohol and smoked marijuana to help him deal with the physical and psychological consequences of his disease and its effects on his functional abilities. He was fired from his job when he failed a drug test, but the court finds credible Cole's testimony that even had he not been fired, he was no longer able to perform all of the functions required of him on the job, and he also had begun having problems with fecal incontinence. Indeed, even Dr. Martin, the consulting physician, noted Cole's muscular dystrophy would have an effect on his endurance level.

The court finds the record does not contain substantial evidence to support the ALJ's conclusion that Cole is not disabled, and contains overwhelming support for an immediate award of benefits. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (on judicial review, if court finds denial of benefits was improper, court "may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding") (citations omitted). Accordingly, the Commissioner's decision is **reversed**, and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a finding that Cole has been disabled since September 30, 2004.

**IT IS SO ORDERED.**

**DATED** this 2nd day of September, 2009.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT